SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

WECHSLER & COHEN, LLP,

                                    Plaintiff,

                - against -

MICHAEL A. SASSANO, III,

                                    Defendant,

THE UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

                                    Nominal –Defendant.

Index No. 600278/09

**SUMMONS**

NEW YORK
COUNTY CLERK'S OFFICE

JAN 2 9 2009

NOT COMPARED
WITH COPY FILED

*To the Above Named Defendants*

          YOU ARE HEREBY SUMMONED to answer the complaint in this action and to

serve a copy of your answer on the Plaintiff within (20) days after the service of this

summons, exclusive of the day of service of this summons (or within (30) days after

service is complete if this summons is not personally delivered to you within the State of

New York); and in case of your failure to appear or answer, judgment will be taken

against you by default for the relief demanded herein.

Dated: New York, New York
          January 29, 2009

                              WECHSLER & COHEN, LLP

                              By:_____
                                        David B. Wechsler
                              *Attorneys for Plaintiff*
                              17 State Street, 15th Floor
                              New York, New York 10004
                              (212) 847-7900

TO:     Michael A. Sassano, III
        50 Surfsong Lane, Suite 101
        Miramar Beach, Florida  32550

        United States Securities and Exchange Commission
        3 World Financial Center
        New York, New York 10281
        Attn: David Stoelting, Esq.
        Senior Trial Attorney

Index No.    Year   2009    RJI No.      Hon.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

WECHSLER & COHEN, LLP,

                                      *Plaintiff,*

                 -against-

MICHAEL A. SASSANO, III,

                                        *Defendant*

THE UNITED STATES SECURITIES
AND EXCHANGE COMMISSION.

                                    *Nominal-Defendant.*

## SUMMONS AND COMPLAINT

**WECHSLER & COHEN, LLP**
*Attorneys for*    Plaintiff
*Office and Post Office Address, Telephone*

17 State Street – 15th Floor
New York , New York 10004
Telephone : (212) 847- 7900

To                                  Signature (Rule 130-1.1-a)

                                          Print name beneath    DAVID B. WECHSLER

Attorney(s)' for

Service of a copy of the within                              is hereby admitted.

Dated,

                                          Attorney(s) for

Please take notice
☐ NOTICE OF ENTRY
that the within is a (*certified*) true copy of a
duly entered in the office of the clerk of the within named court on
☐ NOTICE OF SETTLEMENT
that an order                          of which the within is a true copy will be presented for
settlement to the HON                                     one of the judges
of the within named court, at.
on                           at                M

Dated,                                      Yours, etc.

                                    **WECHSLER & COHEN, LLP**
                                    *Attorneys for*

To                                   *Office and Post Office Address*

Attorney(s) for                           17 State Street – 15th Floor
                                      New York , New York 10004

## WECHSLER & COHEN, LLP

Check Box

action; I have read the foregoing ____ and know the contents thereof; the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters I believe it to be true. The reason this verification is made by me and not by

The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

I affirm that the foregoing statements are true, under the penalties of perjury.
Dated:

.............................................................
*The name signed must be printed beneath*

STATE OF NEW YORK, COUNTY OF                    ss.:

I, the undersigned, being duly sworn, depose and say: I am

☐ **Individual Verification**    in the action; I have read the foregoing

and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true.

☐ **Corporate Verification**    the ____ of ____ a ____

corporation and a party in the within action; I have read the foregoing and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true. This verification is made by me because the above party is a corporation and I am an officer thereof.

The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

Sworn to before me on

.............................................................
*The name signed must be printed beneath*

STATE OF NEW YORK, COUNTY OF                    ss.:        (If more than one box is checked—indicate after names type of service used.)

I, the undersigned, being sworn, say: I am not a party to the action, am over 18 years of age and reside at

On

I served the within

☐ **Service By Mail**    by mailing a copy to each of the following persons at the last known address set forth after each name below.

☐ **Personal Service on Individual**    by delivering a true copy of each personally to each person named below at the address indicated. I knew each person served to be the person mentioned and described in said papers as *a party therein;*

☐ **Service by Electronic Means**    by transmitting a copy to the following persons by ☐ FAX at the telephone number set forth after each name below ☐ E-MAIL at the E-Mail address set forth after each name below, which was designated by the attorney for such purpose, and by mailing a copy to the address set forth after each name.

☐ **Overnight Delivery Service**    by dispatching a copy by overnight delivery to each of the following persons at the last known address set forth after each name below.

Sworn to before me on

.............................................................
*The name signed must be printed beneath*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X

WECHSLER & COHEN, LLP,                              Index No.: 600 278/09

                        Plaintiff,

            -against-                               **COMPLAINT**

MICHAEL A. SASSANO, III,

                        Defendant,
            - and -

THE UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

                        Nominal- Defendant.
------------------------------------------------------------------X

      Plaintiff, Wechsler & Cohen, LLP ("W&C"), for its complaint against defendant Michael

A. Sassano, III ("Sassano") and nominal-defendant the United States Securities and Exchange

Commission ("SEC"), alleges the following:

### NATURE OF ACTION, PARTIES AND JURISDICTION

      1.    W&C brings this action seeking declaratory and related ancillary relief against

defendant Sassano and, as a requirement, nominal defendant the SEC concerning W&C's rights

under: (a) a March 12, 2007, retainer agreement between Sassano and W&C ("Retainer

Agreement") (Exhibit "A"); (b) a July 9, 2008 amended retainer agreement between Sassano and

W&C ("Amended Retainer") (Exhibit "B"); and (c) an Assignment of Arbitration Proceeds

between Sassano and the SEC dated May 8, 2008, (the "Assignment") (Exhibit "C")

acknowledged by W&C.

      2.    W&C is a New York limited liability partnership located at 17 State Street, 15th

Floor, New York, New York 10004.

3.   Defendant Sassano is, upon information and belief, a resident of the State of Florida residing at 50 Surfsong Lane, Suite 101, Miramar Beach, FL 32550.

4.   Defendant SEC is a federal commission formed under Securities Act of 1933 with its headquarters at 100 F Street NE, Washington, D.C. 20549, with a Regional Office at 3 World Financial Center, # 400, New York, New York, 10281.

5.   Pursuant to the Retainer Agreement, Sassano agreed "to be subject to a jurisdiction of state or federal court in New York..."Additionally, this action arises out of business transacted within the State and County of New York, in connection with services provided by W&C in the State and County of New York.

## PERTINENT FACTS

6.   Pursuant to the Retainer Agreement, Sassano agreed to pay W&C all fees and expenses accrued in connection with W&C's representation of Sassano in two arbitrations, one before the National Association of Securities Dealers, Inc. ("NASD"), Office of Dispute Resolution, entitled *CIBC World Markets Corp. v. Michael Sassano*, NASD DR No. 05-02827 (the "CIBC Arbitration"), and the other before the New York Stock Exchange, Inc. ("NYSE"), Department of Arbitration, entitled *Oppenheimer & Company, Inc. v. Michael A. Sassano, III,* NYSE Docket No.: 2004-015814 (the "OPCO Arbitration").

7.   The Retainer Agreement contains an out-of-pocket attorneys' fee cap of $350,000 for W&C's representation of Sassano in both the CIBC Arbitration and OPCO Arbitration, meaning that the most Sassano would pay W&C from his personal funds, exclusive of disbursements, was $350,000. Further, W&C and Sassano agreed that after being reimbursed for any disbursements advanced on his behalf, W&C would also be entitled to be paid 20% of the Net Recovery, as defined in paragraph 4 of the Retainer Agreement, from these arbitrations. [1]

---

[1] The Retainer Agreement provides: "Net Recovery is defined as the total amount of the settlements, awards or judgments (including without limitation, all damages and interest). This shall include, for example, 20% of both any

8.      On or about April 30, 2008, Sassano consented to the entry of an Order by the SEC imposing certain sanctions on him, including without limitation his being barred from association with any broker, dealer, or investment adviser and his paying a civil penalty of $1,000,000 to the SEC. *See* executed Offer of Settlement of Michael Sassano annexed hereto as Exhibit "D."

9.      On May 8, 2008, Sassano and the SEC entered into an Assignment of Arbitration Proceeds (the "Assignment"). The Assignment acknowledged that Sassano claimed amounts due him from CIBC World Markets Corp. in the CIBC Arbitration and that he could receive a monetary award in his favor (the "CIBC Arbitration Proceeds"). The Assignment further provides that Sassano agreed to "sell, assign, grant, and transfer unto [the SEC] all rights and interest which Sassano had to the first One Million Dollars of the Net Arbitration Proceeds," or such lesser unpaid amount to the SEC ("Sassano's Portion"). Sassano made a "present, absolute and irrevocable transfer and assignment" of the Sassano Portion to the SEC.

10.     The Assignment, however, defines the "Net Arbitration Proceeds" as any amounts remaining from the Arbitration Proceeds, "after payment of the fees and reimbursement due to [W&C] . . ., deduction for any amounts due to CIBC, and any assessments imposed by the arbitration panel and/or the Financial Industry Regulatory Authority." In other words, the SEC subordinated its payment rights to W&C.

11.     The Assignment requires W&C to deposit the CIBC Arbitration Proceeds in its attorney escrow account and "directs that W&C shall disburse the Arbitration Proceeds actually paid and received by it in accordance with the terms of this Assignment."

---

affirmative recovery you may receive on claims you bring and 20% of the amounts of the claims brought by Oppenheimer and/or CIBC which you may defeat (such as claims for unpaid loans and/or notes with interest) whether you defeat them by motion, after a full evidentiary hearing, by settlement, and/or otherwise." (Emphasis in original.).

12.     On or about July 9, 2008, pursuant to Sassano's request, W&C and Sassano amended the Retainer Agreement (the "Amended Retainer") by eliminating the cap on the amount of out-of-pocket attorneys' fees Sassano would be required to pay W&C in exchange for the elimination of the 20% contingency interest in favor of W&C for both arbitrations.

13.     In October 2008, following discussions about bills issued and arrears owed, W&C and Sassano agreed to a new but *conditional* attorneys' fee cap; Sassano, of course, maintained a continual obligation to pay all disbursements to W&C. *See* email exchange dated October 14 and 15, 2008, annexed as Exhibit E. The conditions included that Sassano would: (a) make a prompt payment to W&C of $50,000; and (b) Sassano would pay W&C additional attorneys' fees of no more than $110,000 plus disbursements provided that full payment was made in a reasonable time-frame and without collection efforts. Thus, even if Sassano collected nothing for both arbitrations, he was to make payment by about the end of the first quarter of 2009. On the other hand, if arbitration award(s) were issued in Sassano's favor and paid, there was no reason to delay payment to W&C, and W&C would be promptly paid such $110,000 in legal fees and all outstanding disbursements out of the award(s).

14.     On November 5, 2008, the Panel in the OPCO Arbitration issued an award in Sassano's favor, rejecting OPCO's request for repayment of a certain promissory note, interest, and attorneys' fees. *See* Exhibit "F." The Panel also denied Sassano's counter-claims.

15.     On November 17, 2008, the Panel in the CIBC Arbitration issued an award in Sassano's favor, awarding him $250,250 and rejecting CIBC's request for repayment of a certain promissory note, interest and attorneys' fees. *See* Exhibit "G."

16.     CIBC subsequently paid the $250,250 in Arbitration Proceeds. W&C deposited the funds in its escrow account as required by the Assignment. When W&C requested Sassano's authorization to pay W&C the $110,000 in legal fees due it and to pay three outside vendors the

fees due them, Sassano in part objected, opposing the payment of one vendor's invoice and raising attorneys' fees issues with W&C.

17.     W&C attempted to resolve these issues with Sassano, to no avail.

18.     On December 22, 2008, W&C wrote to the SEC advising the SEC of the dispute (the "December Letter"). *See* Exhibit "H" hereto.

19.     In the December Letter, W&C highlighted three scenarios for calculation of Sassano's outstanding attorneys' fees and disbursements (the third of which, although to W&C's benefit, W&C disagrees with but nonetheless felt constrained to raise based on a November 20, 2008 e-mail W&C received from Sassano).

20.     Under the October 2008 *conditional* cap scenario, W&C is entitled to issue itself a check from its escrow account for $110,000 in attorneys' fees, plus outstanding disbursements due W&C of $10,926.83 and to IKON of $657.67, for a disbursement total of $11,584.50 (all other outside disbursements were paid with Sassano's approval).

21.     Sassano, however, objected to W&C making these payments out of W&C's escrow account from the Arbitration Proceeds, thereby breaching the pre-condition for capping W&C's attorneys' fees at $110,000 (*i.e.*, it would be paid out of the Arbitration Proceeds and without collection efforts). Consequently, the Amended Retainer controls and Sassano instead owes W&C for all of the time W&C incurred (at the hourly rates agreed upon) plus disbursements that to date remain unpaid. This is $159,086.92 in attorneys' fees and $11,584.50 in disbursements.

22.     The balance due W&C by Sassano remains unsatisfied despite W&C having performed all the terms and conditions of the Retainer and Amended Retainer.

23.     Sassano has objected to the distribution of any funds from the Arbitration Proceeds to satisfy W&C's outstanding attorneys' fees and disbursements.

24.   W&C has notified the SEC of the situation, and the SEC, like W&C, wants a determination by this Court so that W&C may pay itself that to which it is entitled and pay the SEC any escrow balance.

## FIRST CAUSE OF ACTION (DECLARATORY RELIEF)

25.   W&C repeats and realleges paragraphs 1 through 24 of the Complaint as if set forth fully herein.   There is an actual and present controversy between W&C and Sassano concerning whether Sassano has any rights to the arbitration proceeds under the Assignment.

26.   W&C requests a judicial declaration that Sassano has no rights under the Assignment, no rights to any of the Arbitration Proceeds from the CIBC Arbitration pursuant to the Assignment, and that W&C and the SEC alone may determine the amount of W&C fees and disbursements to be paid out of the Arbitration Proceeds.

27.   A judicial determination of this issue is necessary and appropriate now to permit W&C to determine its legal rights and obligations.

## SECOND CAUSE OF ACTION (DECLARATORY RELIEF)

28.   W&C repeats and realleges paragraphs 1 through 27 as if fully set forth at length herein.

29.   There is an actual and present controversy between W&C and Sassano concerning the amount of attorneys' fees and disbursements due to W&C.

30.   W&C requests a judicial declaration as to the amount of attorneys' fees and disbursements due W&C.

31.   A judicial determination of this issue is necessary and appropriate now to permit W&C to determine and fix its legal fees and disbursement entitlement, and thereby also to determine the SEC's entitlement out of the Arbitration Proceeds, if any.

WHEREFORE, the Plaintiff W&C respectfully demands the following relief:

1.     a declaration that Sassano has no rights to the Arbitration Proceeds from the

    CIBC Arbitration pursuant to the Assignment;

2.     a declaration fixing the amount of attorneys' fees and disbursements due W&C

    (to be paid out of the Arbitration Proceeds); and

3.     such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       January 29, 2009

WECHSLER & COHEN LLP

By:_____
      David B. Wechsler
17 State Street, 15th Floor
New York, New York 10004
(212) 847-7900

TO:    Michael A. Sassano, III
       50 Surfsong Lane, Suite 101
       Miramar Beach, Florida 32550

       United States Securities and Exchange Commission
       3 World Financial Center
       New York, New York 10281
       Attn: David Stoelting, Esq.
       Senior Trial Attorney

Exhibit A

# WECHSLER & COHEN, LLP

Attorneys At Law
17 State Street
15th Floor
New York, New York 10004
Telephone: (212) 847-7900
Telecopier: (212) 847-7955

MITCHELL S. COHEN
DIRECT DIAL: (212) 847-7918
E-mail: mcohen@wechco.com

July 9, 2008

**_By Hand_**

Mr. Michael Sassano
50 Surfsong Lane, Suite 101
Miramar Beach, Florida 32550

> Re:    _CIBC World Markets Corp. v Michael Sassano: NASD 05-02827_
> - and -
> _Oppenheimer & Co., Inc. v. Michael Sassano_
> _NYSE Docket No. 2004-015814_

Dear Mr. Sassano:

This is to confirm the agreement to amend your March 7, 2007 retainer agreement with us. Concisely stated, you have suggested, and we have agreed, that the cap on attorneys' fees is eliminated in exchange for the elimination of any contingency fee interest in favor of our firm for both these matters. You have reviewed our billing practices to date before suggesting this change. Also, we have together predicted that the two cases will wrap up for about another $200,000 to $250,000 in fees, you hope to be at the bottom of this range, and ask that I be mindful of that. Of course, this expectation is based upon assumptions discussed, and we both recognize that predicting the future course of arbitration, at best, is a bit of educated guesswork. The fees could be higher or lower depending upon the work needed and alternatives chosen. For an obvious example, if the _OPCO_ arbitration settles at tomorrow's mediation, the fees will be less than if a full hearing takes place. On the other hand, it is not certain that if the _OPCO_ arbitration is not settled that it will be completed in the four hearing dates now scheduled. That, of course, would increase the time and expense in _OPCO_. Similarly, if _CIBC_ becomes further elongated that too could increase time and fees.

In any event, we look forward to continuing our work together. If this letter accurately memorializes our agreement, please sign where indicated below.

Very truly yours,

Mitchell S. Cohen

ACCEPTED AND AGREED:

Michael Sassano

Exhibit B

## ASSIGNMENT OF ARBITRATION PROCEEDS

THIS ASSIGNMENT OF ARBITRATION PROCEEDS (this "**Assignment**") is made as of the Effective Date (see below), by **MICHAEL SASSANO** ("**Assignor**") in favor of the **UNITED STATES SECURITIES AND EXCHANGE COMMISSION** ("**Assignee**").

WHEREAS, Assignee instituted an administrative proceeding captioned *In the Matter of Michael Sassano, et al.*, File No. AP-3-12554 (the "**SEC Proceeding**"); and

WHEREAS, Assignor and CIBC World Markets Corp. have claims against each other pending in certain arbitration proceedings styled *CIBC World Markets Corp. v. Michael Sassano*, NASD 05-02827 (the "**Arbitration**"); and

WHEREAS, Assignor has claimed in the Arbitration amounts due from CIBC and may receive a monetary award in his favor (the "**Arbitration Proceeds**");

WHEREAS, Assignor will be entitled to the amount remaining from the Arbitration Proceeds after payment of the fees and reimbursement of disbursements due to Wechsler & Cohen, LLP ("**W&C**"), his attorneys in the Arbitration, deduction for any amounts due to CIBC, and any assessments imposed by the Arbitration panel and/or the Financial Industry Regulatory Authority (the "**Net Arbitration Proceeds**"); and

WHEREAS, Assignee and Assignor are contemplating entry into an agreement that will become final on the date (the "**Effective Date**") that the Securities and Exchange Commission enters an order (the "**SEC Order**") pursuant to which Assignor will agree to pay to the Assignee an amount equal to One Million Dollars ($1,000,000.00) (the "**SEC Payment**"); and

WHEREAS, Assignor has agreed to assign to Assignee so much of Assignor's rights in and to only the Net Arbitration Proceeds as is equal to the unpaid SEC Payment;

NOW, THEREFORE, for and in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

1.  Assignor does, upon the Effective Date, sell, assign, grant, and transfer unto Assignee all rights and interests which Assignor has and may thereafter have to the first One Million Dollars ($1,000,000) of the Net Arbitration Proceeds, or such lesser amount as may be equal to the then-outstanding unpaid SEC Payment ("**Assignee's Portion**").

2.  It is the intention of Assignor to establish hereby a present, absolute and irrevocable transfer and assignment to Assignee of Assignee's Portion.  Promptly upon request of Assignee, Assignor agrees to execute and deliver all such further assignments as Assignee shall from time to time require.

3.  Assignee shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty, or liability of Assignor, that exists now or may exist in the future in connection with the Arbitration.

4.  Assignor hereby represents and warrants to Assignee that the following are true and correct as of the date of this Assignment and will remain true until the SEC Payment has been made:

    a.       Assignor is the sole owner of the Net Arbitration Proceeds;

     b.     Neither the Net Arbitration Proceeds nor any interest therein have been assigned to any person or entity other than Assignee;

     c.     No consent of any other party is required to be obtained by Assignor in connection with the execution or delivery of this Assignment.

5.  Wherever the term "Assignor" appears herein it shall be deemed to refer to and bind, jointly and severally, Michael A. Sassano, and each of his successors and assigns. All of the rights, powers, privileges, and immunities herein granted and assigned to Assignee shall also inure to its successors and assigns.

6.  This Assignment does not limit, modify or otherwise alter the rights and obligations of Assignee and Assignor under the SEC Order.

7.  W&C shall give the Assignee written notice that an award has been issued in the Arbitration within two business days of the receipt of such award.  No earlier than the issuance of an award in the Arbitration, the Assignee may serve a copy of the Assignment on CIBC.  The parties hereto shall direct CIBC to deposit the Arbitration Proceeds, if any, in the attorney escrow account at W&C and Assignor directs that W&C shall disburse the Arbitration Proceeds actually paid and received by it in accordance with the terms of this Assignment.  W&C shall pay to Assignee any amount due under this Assignment within 5 business days of receipt into the escrow account of the Arbitration Proceeds.  If Assignee's Portion is greater than the Net Arbitration Proceeds, W&C shall, upon Assignee's written request, within 10 business days, provide Assignee with a written statement setting forth the basis for its calculation of Net Arbitration Proceeds.  Assignee acknowledges that it has no right or interest in any portion of the Arbitration Proceeds in excess of the Assignee's Portion, and that W&C may immediately disburse any such amounts in excess of the Assignee's Portion immediately upon receipt thereof.

8.  All notices required under this Assignment shall be: (i) personally delivered or (ii) given by certified mail, postage prepaid, return receipt requested, or (iii) forwarded by a commercially recognized overnight courier service, addressed as follows:

     If to Assignor:     Graeme W. Bush, Esq.
                                  Zuckerman Spaeder LLP
                                  1800 M Street, NW, Suite 1000
                                  Washington, DC  20036

     If to Assignee:     David Stoelting, Esq.
                                    United States Securities and Exchange Commission
                                  New York Regional Office
                                  3 World Financial Center, #400
                                  New York, NY 10281

Any person entitled to receive notice hereunder may designate a new address for notices by giving notice thereof pursuant to this paragraph.  All notices shall be in writing and be deemed given, in the case of notice by personal delivery, upon actual delivery, and in the case of appropriate mail or courier service, three (3) days after deposit with the U.S. Postal Service or delivery to the courier service.

2

1758465.1
1769398.4

9.   In the event any provision of this Assignment is held to be invalid or unenforceable, all other provisions shall continue in full force and effect.

10.  No provision of this Assignment may be amended, changed, waived, modified or varied in any manner whatsoever unless in writing duly signed by Assignor and Assignee.

11.  This Assignment shall be construed according to and governed by the laws of New York.

**IN WITNESS WHEREOF**, the undersigned, with full power and authority to do so, intending that this instrument shall constitute an instrument under seal, has executed, delivered, and sealed this instrument as of the date first written above.

<u>**ASSIGNOR:**</u>

WITNESS:

_____          _____ (SEAL)
                                          Michael Sassano


STATE OF NEW YORK          )

                           )          SS.

COUNTY OF NEW YORK         )

I, JER WEI CHEN, a notary public, DO HEREBY CERTIFY THAT Michael Sassano, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his free and voluntary act for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal this 8th day of MAY, 2008.

ACKNOWLEDGED:

**JER WEI CHEN**
**Notary Public, State of New York**
**No. 01CH6174210**
**Qualified in Nassau County**
**Certificate Filed in New York County**
**Commission Expires 09/17/2011**

WECHSLER & COHEN, LLP

Wechsler & Cohen, LLP

By _____
By  Mitchell S. Cohen, limited liability partner

3

1758465.1
1769398.4

Attorneys for Michael Sassano in
Arbitration Proceeding

SECURITIES AND EXCHANGE COMMISSION

David Stoelting
Senior Trial Counsel

4

1758465.1
1769398.4

03/19/2007 MON 17:06 [TX/RX NO 5734] ☑001

**WECHSLER & COHEN, LLP**

Attorneys At Law
17 State Street
15th Floor
New York, New York 10004
Telephone: (212) 847-7900
Telecopier: (212) 847-7955

DAVID E. WECHSLER
DIRECT DIAL: 212-847-7915
E-mail: dwechsler@wechco.com

March 12, 2007

*VIA E-MAIL and TELCOPIER*

Mr. Michael Sassano
50 Surfsong Lane Suite 101
Miramar Beach, Florida 32550
Fax-011-377.97981452

Re:    *CIBC World Markets Corp. v Michael Sassano: NASD 05-02827 and*
       *Oppenheimer & Co. Inc. v. Michael A. Sassano, III: NYSE2004-015814*

Dear Michael:

This will confirm your retention of my firm, and our authority to represent you, in connection with the two above-referenced matters. In connection therewith, it is understood that we will act as co-counsel with respect to these matters with Jonathan Harris under the terms of this retainer agreement at such time as Mr. Harris leaves Curtis, Mallet-Prevost, Colt & Mosle LLP, and that Mr. Harris will be paid as part of this agreement, in a fashion to be agreed upon between Mr. Harris and my firm. ~~In this regard you have informed us that you also intend to separately retain Curtis, Mallet-Prevost, Colt & Mosle LLP and Mr. Harris to represent you in ongoing regulatory matters.~~ The following are the terms of our representation and retention:

1.    Our retainer fee is $50,000.00 which you agree to promptly pay. This retainer fee shall be deposited in our regular business account. This retainer fee shall be applied against our attorneys' time, charges and disbursements, which you agree to pay. This retainer fee shall be replenished each time you pay an invoice, so that following such payment the retainer amount will again be $50,000.00, provided that in the event aggregate fees paid to us reach $300,000, any further fees up to the $350,000 cap (described in paragraph 3 below) shall be taken directly from the retainer, and there shall be no further obligation to replenish.

2.    Our time is billed as follows:

a.    My time will be billed at $350 per hour (about 65% of my standard rate of $550 per hour). I understand Jonathan Harris will bill his time at the same rate.

b.    It is understood that on occasion, under certain circumstances, we may call upon other lawyers in my firm to work on your matter and their time charges range between $195 and $325 per hour (which is 65% of their standard rates).

Mar 19 2007 11:06PM  FAX HP LASERJET                    p.1

03/19/2007 MON 17:06 [TX/RX NO 5734] 002

**WECHSLER & COHEN, LLP**

Michael Sassano
March 12, 2007
Page 2

    c.    Paralegal's time, if any, is billed at $60 per hour (again, which is 65% of standard rates.

    d.    The above-quoted rates are subject to periodic increases. These hourly rates, if adjusted, will be told to you in advance and reflected on your bills.

    e.    Disbursements or out of pocket expenses advanced on your behalf, for which you will be billed, may include, for example, outside experts such as accountants, economists compensation or securities experts (none of which shall be retained without your prior authorizations); photocopies; messenger service; telecopies; postage; long distance telephone calls; travel charges; filing fees; and deposition and/or hearing transcripts. At our request, you agree to pay directly and promptly, significant disbursement expenses incurred or to be incurred on your behalf. These expenses are separate from your obligations to pay our attorneys' fees (and thus, not within the below stated attorneys' fee cap)

    3.    It is agreed that you will only be responsible for payment of our attorneys' fees (which includes paralegal fees) up to a limit of $350,000.00. You will be kept advised of the current status of your account and we will bill you on a monthly or less frequent basis depending upon the cases' activity level (of course, only up to $350,000.00 in attorneys' fees). You agree to full satisfy such bills within thirty (30) days. Despite and separate and apart from this limitation on fees, however, you agree to bear continuing responsibility for all disbursements incurred (as noted in paragraph 2(e) above) and to pay them in a prompt manner.

    4.    Additionally, it is further agreed that after being reimbursed for any disbursements we may have advanced on your behalf, we will also be entitled to and paid twenty (20%) percent of the Net Recovery. Net Recovery shall be defined as the total amount of the settlements, awards or judgments (including without limitation, all damages and interest). This shall include, for example, 20% of both any affirmative recovery you may receive on claims you bring and 20% of the amounts of the claims brought by Oppenheimer and/or CIBC which you may defeat (such as claims for unpaid loans and/or notes with interest) whether you defeat them by motion, after a full evidentiary hearing, by settlement, and/or otherwise. It is understood that Oppenheimer has "applied" the balance of your Deferred Compensation plan (approximately $1.5 million) against approximately $1.6 million Oppenheimer claims it is owed by you on notes. In the event we are successful in defeating in whole or in part Oppenheimer's claim on the notes, we are entitled to 20% of any reduction in the amount you must pay on the notes, however, we are not entitled to an additional 20% of any of the "applied" funds that are thereby returned to you. In the event we are fortunate enough to secure an attorneys' fees award for you, it is agreed that in addition to our twenty (20%) percent contingency, my firm shall be paid the amount of that attorneys' fee award less the amount of attorneys' fees you paid us on that particular case.

    5.    This retainer agreement does not include any judicial matters. For example, if the award is challenged in court by a motion to vacate or otherwise appealed, or you decide to challenge, confirm or appeal such award, any services by us with respect thereto will be subject to a further

03/19/2007 MON 17:06 [TX/RX NO 5734] @005

## WECHSLER & COHEN, LLP

Michael Sassano
March 12, 2007
Page 3

agreement with you. Notwithstanding the foregoing, should you be awarded $2 million or more in a case, with respect to that case we will represent you on any motion to vacate at our aforesaid reduced hourly rates but will collect our attorneys' fees only from the payment of the award itself.

      6.      You agree that *any* award shall be paid and deposited into our escrow account and then be appropriately allocated and paid to you and us.

      7.      You agree that a material element of your agreement is that you fully and promptly cooperate, including attending all hearings, and be fully honest with us at all times. To the extent you do not honor this fundamental element of our arrangement, you agree that we have the option to convert this retainer agreement into one pursuant to which we are to, and will be, paid exclusively based on our time incurred and hourly rates (plus disbursements), without the fee cap (or ceiling) set forth in paragraph 3 above, which you agree to promptly and fully pay.

      8.      To the extent you do not satisfy any of your obligations to us hereunder, you consent to our withdrawal as your counsel, and you further agree to accept service of process by any acceptable overnight courier at your address you will insert above (or any other address you may notify us of in writing), and to be subject to the jurisdiction of any state or federal court in New York, which judgment you agree shall be given full force and effect by any court in any country or municipality in which you may reside, and that you shall not contest the forgoing. To the extent a New York court may decline or not have jurisdiction, you agree to have the matter adjudicated in a court located in the country or municipality in which you then reside. You further agree that any judgment rendered by any court may be enforced on any property you possess in any country or municipality.

      9      In the event of a disagreement between us about our fees and/or disbursements, you may have the right to arbitration before the Bar of the City of New York and/or other bodies that govern or monitor attorneys. We will provide you with such information about arbitrating any such fee dispute if one should arise or upon your request.

      10.      Our wire instructions for purposes of prompt payment are as follows:

          Name of Account:    Wechsler & Cohen, LLP
          Account Number:    24431227 (general account)
          Bank Address:    Citibank, N.A.
                            1155 Avenue of the Americas
                            New York, New York 10036
          ABA Routing No.:    021000089
          SWIFT Code:    CITI33US
          Tax I.D.    # 13-3805383

      If the foregoing accurately reflects our agreement, please so acknowledge by signing the enclosed copy of this letter and returning it to us. As always, we will attempt to keep costs as reasonable as possible under the circumstances and, in connection therewith, to keep you regularly informed of the status of the matter. We look forward to assisting you.

p.3                                 Mar 19 2007 11:06PM  FAX HP LASERJET

03/19/2007 MON 17:06 [TX/RX NO 5734] ☎004

**WECHSLER & COHEN, LLP**

Michael Sassano
March 12, 2007
Page 4

Very truly yours,

David B. Wechsler

*ACCEPTED AND AGREED TO:*

MICHAEL SASSANO

Exhibit D

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

ADMINISTRATIVE PROCEEDING
File No. 3-12554

|  |  |  |
|---|---|---|
| In the Matter of | : | |
| **MICHAEL SASSANO,** | : | **OFFER OF SETTLEMENT** |
| **DOGAN BARUH,** | : | **OF MICHAEL SASSANO** |
| **ROBERT OKIN** and | : | |
| **R. SCOTT ABRY** | : | |
|  | : | |
| Respondents. | : | |
|  | : | |

**I.**

Michael Sassano ("Sassano" or "Respondent"), pursuant to Rule 240(a) of the Rules of Practice of the Securities and Exchange Commission ("Commission") [17 C.F.R. § 201.240(a)] submits this Offer of Settlement ("Offer") after public administrative and cease-and-desist proceedings were instituted against him by the Commission, pursuant to Section 8A of the Securities Act of 1933 ("Securities Act"), Sections 15(b)(6) and 21C of the Securities Exchange Act of 1934 ("Exchange Act"), Section 203(f) of the Investment Advisers Act of 1940 ("Advisers Act"), and Section 9(b) of the Investment Company Act of 1940 ("Investment Company Act").

**II.**

This Offer is submitted solely for the purpose of settling this proceeding, with the express understanding that it will not be used in any way in these or any other proceedings, unless the Offer is accepted by the Commission. If the Offer is not accepted by the Commission, the Offer is withdrawn without prejudice to Respondent and shall not become a part of the record in these or any other proceedings, except for the waiver expressed in Section V with respect to Rule 240(c)(5) of the Commission's Rules of Practice [17 C.F.R. § 201.240(c)(5)].

**III.**

On the basis of the foregoing, the Respondent hereby:

A.      Admits the jurisdiction of the Commission over him and over the matters set forth in the Order Instituting Public Administrative and Cease-and-Desist Proceedings, Making

Findings and Imposing Remedial Sanctions Pursuant to Section 15(b) and 21C of the Securities Exchange Act of 1934, Section 203(f) of the Investment Advisers Act of 1940, and Sections 9(b) and 9(f) of the Investment Company Act of 1940 ("Order"); and

B.    Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission or in which the Commission is a party and without admitting or denying the findings contained in the Order, except as to the Commission's jurisdiction over him and the subject matter of these proceedings, which are admitted, consents to the entry of an Order by the Commission containing the following findings[1] and remedial sanctions set forth below:

## Respondent

1.    **Michael Sassano**, 37, resides in Monaco. From July 1995 until January 2003, Sassano was employed as a registered representative ("RR") by CIBC World Markets Corp. ("CIBC") in its CIBC Oppenheimer retail division, and specifically in its Private Client Division ("PCD"). On April 24, 2002, Sassano was promoted to Managing Director. He was a RR of CIBC until January 2003, at which time he became a RR of Fahnestock & Co., Inc. ("Fahnestock"). In September 2003, Fahnestock changed its name to Oppenheimer and Co., Inc. ("Oppenheimer"). Sassano holds Series 7, 63 and 65 licenses. In March 2004, Oppenheimer indefinitely suspended Sassano, and later in 2004 his employment terminated.

## Other Relevant Entities

2.    **CIBC** is a New York-based broker-dealer subsidiary of Canadian Imperial Bank of Commerce, Inc., a Canadian financial and bank holding company. During the relevant time period, CIBC was registered with the Commission as both a broker-dealer and an investment adviser. CIBC, through its CIBC Oppenheimer retail division, serviced high-net-worth individuals, money managers, and other customers, including hedge funds. In January 2003, CIBC sold its Oppenheimer retail division to Fahnestock. On July 20, 2005, the Commission instituted settled administrative and cease-and-desist proceedings against CIBC, in which CIBC settled to charges that it violated Section 17(a) of the Securities Act, Sections 7(c), 10(b), 11(d), 15(c) and 17(a) of the Exchange Act and Rules 10b-3, 10b-5 and 17a-3 thereunder, as well as Rule 22c-1 as adopted under Section 22(c) of the Investment Company Act and Regulation T promulgated by the Federal Reserve Board regarding the extension of margin credit.

3.    **Fahnestock** was a New York-based broker-dealer which, in January 2003, through its parent holding company Fahnestock Viner Holdings, Inc., acquired CIBC's retail division. After the purchase, Sassano became a Fahnestock employee. In September 2003, Fahnestock changed its name to Oppenheimer. Oppenheimer is registered with the Commission as both a broker-dealer and an investment adviser.

---

[1] The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceedings.

2

## Summary

4.      This matter involves Sassano's deceptive market timing while a RR at CIBC and Fahnestock.  Sassano and other RRs at CIBC and Fahnestock (the "Brokers"), engaged in a scheme to defraud mutual fund companies.

5.      Between 1998 and September 2003, Sassano and the Brokers, who acted under his direction, actively assisted market timing customers in deceiving mutual funds.  CIBC, Fahnestock and the Brokers received hundreds of letters and emails from mutual funds regarding their market timing trading activities.  Sassano and the Brokers repeatedly ignored these communications, and continued to work with their market timing customers to implement their market timing strategies up until the point when mutual funds threatened to terminate their dealer agreements with CIBC or Fahnestock.  Even then, Sassano and the Brokers did not always stop market timing, resulting in a number of mutual fund companies terminating their dealer agreements with CIBC or Fahnestock, or refusing to accept any trades from Sassano's branch.

6.      Among the deceptive practices that Sassano and the Brokers engaged in on behalf of their customers were the following: (a) using new account numbers for blocked customer accounts; (b) creating new RR numbers to disguise themselves and their customers from the mutual funds; (c) trading in smaller amounts in order to avoid detection by the mutual funds, including using an in-house electronic trading platform to break up trades into small dollar volumes; (d) using annuities to market time; (e) using the investment adviser trading platforms of two broker-dealers, Charles Schwab & Co., Inc. ("Schwab") and FMR Corp. ("Fidelity"), to continue market timing mutual funds that had previously blocked Sassano's customers' trading; and (f) on one instance, sending trades from a different branch to deceive the mutual funds about the origins of the trade.  Sassano's supervisors were aware that Sassano and the Brokers used deceptive tactics to evade the mutual fund companies' restrictions.

## Deceptive Market Timing

7.      Sassano started at CIBC in 1995 and, over the next few years, he created a large market timing business in which he executed mutual fund orders on behalf of his customers – large market timing hedge funds.  CIBC supported his market timing business, including giving him the exclusive right to engage in market timing at CIBC.  Sassano also requested, and his supervisors approved, the creation of an electronic trading platform at CIBC to facilitate Sassano's market timing business.  Thus, CIBC created the Mutual Fund Exchange System ("MFES") exclusively for Sassano.  The MFES allowed Sassano's customers to submit their mutual fund trades via electronic spreadsheet, which Sassano and the Brokers could then electronically convert into orders within CIBC's systems.  The MFES system had the added benefit of allowing customers to submit multiple smaller trades within one account as a means to stay under the radar of mutual funds' internal timing monitors.

8.      Sassano and the Brokers, acting at his direction, opened multiple accounts for their customers in order to disguise the identity of account holders and continue market timing on behalf of customers that mutual funds had previously blocked.  Creating new accounts

3

enabled a market timer to evade blocks mutual funds had placed on their previous timing accounts.

9.      Some mutual funds discerned that Sassano and the Brokers enabled their customers to clone accounts to evade blocks and notified CIBC and Fahnestock that they disapproved of the practice. Dozens of mutual fund companies, through letters, e-mails and other communications, told Sassano and the Brokers of the harm suffered by long-term shareholders as a result of their deceptive market timing. Sassano and the Brokers continued to enter trades in violation of the instructions of the mutual fund companies to stop. As an internal CIBC e-mail to Sassano and a Broker in January 2003 stated, one mutual fund company was "frustrated by the fact that you stop timing in current accounts when they ask only to show up later in others."

10.      Sassano and the Brokers used multiple RR numbers to deceive mutual funds about the source of market timing trades. Using alternative RR numbers allowed the Brokers and their customers to "disguise" their identity and fool the mutual funds into believing that they had not been previously blocked from trading. This became increasingly important as Sassano's business grew and mutual funds began to identify RR numbers associated with Sassano as the source of the abusive trading. Sassano and the Brokers had at least 85 RR numbers at CIBC.

11.      Another method Sassano and the Brokers used to disguise their timing from mutual funds was to stay "under the radar" of the funds by breaking up trades in smaller dollar amounts. Sassano and the Brokers opened multiple accounts for their timing customers in order to spread timing money across multiple accounts, instead of trading one large lump sum, which would have been a "red flag" to mutual funds. For example, one market timing customer of Sassano's had 195 accounts at CIBC and Fahnestock; another had 246 accounts.

12.      Platforms at other broker-dealers were also used as a way to deceive mutual funds. Specifically, utilizing CIBC's status as an investment adviser, Sassano and the Brokers opened accounts at Fidelity and Schwab on behalf of his market timing customers as another means of evading mutual fund blocks.

13.      The market timing of Sassano and the Brokers occurred on a large scale. From January 1998 through September 2003, Sassano and the Brokers market timed more than 80 mutual fund companies. Their market timing customers purchased more than $90 billion of mutual fund shares through more than 217,000 trades. During this period, the trades placed by Sassano and the Brokers on behalf of their market timing customers had a median holding period of only two days.

<u>**Violations**</u>

14.      As a result of the conduct described above, Sassano willfully violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, which prohibit fraudulent conduct in the offer and sale of securities, and in connection with the purchase or sale of securities. Among other things, Sassano participated in a scheme with his market timing customers to defraud mutual funds and their shareholders by engaging in

4

deceptive market timing. Sassano defrauded mutual funds and their shareholders when he and the Brokers misrepresented and concealed the identities of CIBC's RRs and customers, as well as the nature of their customers' market timing activity, from the mutual funds. Sassano acted knowingly and/or recklessly in engaging in these activities.

15.     As a result of the conduct described above, Sassano willfully aided and abetted and caused his customers' violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, which prohibit fraudulent conduct in the offer and sale of securities, and in connection with the purchase or sale of securities. Among other things, Sassano's market timing customers engaged in a fraudulent scheme to conceal their identities from mutual fund companies' internal monitors and by late trading. Customers consulted with Sassano and authorized deceptive market timing. Sassano acted knowingly and/or recklessly in engaging in these activities.

16.     As a result of the conduct described above, Sassano willfully aided and abetted and caused CIBC's violations of Section 15(c) of the Exchange Act, which prohibits a broker or a dealer from effecting any transaction in, or inducing or attempting to induce the purchase or sale of, any security by means of any manipulative, deceptive, or other fraudulent device or contrivance, and Rule 10b-3, which prohibits a broker or dealer from using or employing any act, practice or course of business that is a manipulative, deceptive, or other fraudulent device or contrivance in connection with the purchase or sale of any security otherwise than on a national security exchange.

## IV.

On the bases of the foregoing, Respondent hereby consents to the entry of an Order by the Commission imposing the following remedial sanctions pursuant to Section 15(b) of the Exchange Act:

A.     Respondent Sassano shall cease and desist from committing or causing any violations and any future violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

B.     Respondent Sassano shall cease and desist from causing any violations and any future violations of Section 15(c) of the Exchange Act and Rule 10b-3 thereunder.

C.     Respondent Sassano shall be, and hereby is, barred from association with any broker, dealer or investment adviser, and is prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter.

D.     Any reapplication for association by the Respondent will be subject to the applicable laws and regulations governing the reentry process, and reentry may be conditioned upon a number of factors, including, but not limited to, the satisfaction of any or all of the following:  (a) any disgorgement ordered against the Respondent, whether or not the

Commission has fully or partially waived payment of such disgorgement; (b) any arbitration award related to the conduct that served as the basis for the Commission order; (c) any self-regulatory organization arbitration award to a customer, whether or not related to the conduct that served as the basis for the Commission order; and (d) any restitution order by a self-regulatory organization, whether or not related to the conduct that served as the basis for the Commission order;

      E.      IT IS FURTHERED ORDERED that Respondent shall pay disgorgement of $1 and a civil money penalty in the amount of $1,000,000 to the Securities and Exchange Commission. Sassano shall satisfy this obligation by paying: (1) $100,001 within 10 days of entry of this Order; (2) $450,000 within 180 days of entry of this Order; and (3) the remaining $450,000 within 360 days of entry of this Order. Such payments shall be: (1) made by United States postal money order, certified check, bank cashier's check or bank money order; (2) made payable to the Securities and Exchange Commission; (3) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and (4) submitted under cover letter that identifies Sassano as a Respondent in these proceedings, the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to David Stoelting, Senior Trial Counsel, Division of Enforcement, Securities and Exchange Commission, New York Regional Office, 3 World Financial Center, New York, NY 10281.

      F.      Such civil money penalty may be distributed pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002 ("Fair Fund distribution"). Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Respondent agrees that he shall not, after offset or reduction in any Related Investor Action based on Respondent's payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by offset or reduction of any part of Respondent's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Respondent agrees that he shall within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondent by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

V.

      By submitting this Offer, Respondent hereby acknowledges his waiver of those rights specified in Rules 240(c)(4) and (5) [17 C.F.R. §201.240(c)(4) and (5)] of the Commission's Rules of Practice. Respondent also hereby waives service of the Order.

6

## VI.

Respondent understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings" (17 C.F.R. §202.5(e)). In compliance with this policy, Respondent agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any finding in the Order or creating the impression that the Order is without factual basis; and (ii) that upon the filing of this Offer of Settlement, Respondent hereby withdraws any papers previously filed in this proceeding to the extent that they deny, directly or indirectly, any finding in the Order. If Respondent breaches this agreement, the Division of Enforcement may petition the Commission to vacate the Order and restore this proceeding to its active docket. Nothing in this provision affects Respondent's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

## VII.

Consistent with the provisions of 17 C.F.R. § 202.5(f), Respondent waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.

## VIII.

Respondent hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Respondent to defend against this action. For these purposes, Respondent agrees that Respondent is not the prevailing party in this action since the parties have reached a good faith settlement.

## IX.

Respondent agrees that he shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source including, but not limited to, payment made pursuant to any insurance policy, with regard to any penalty amounts that Respondent shall pay pursuant to this Order, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Respondent further agrees that he shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state or local tax for any penalty amounts that Respondent shall pay pursuant to this Order, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

## X.

Respondent states that he has read and understands the foregoing Offer, that this Offer is made voluntarily, and that no promises, offers, threats, or inducements of any kind or nature whatsoever have been made by the Commission or any member, officer, employee, agent, or representative of the Commission in consideration of this Offer or otherwise to induce him to submit to this Offer.

3 0   day of April 2008

_____
Michael Sassano

_____
Notary Public

State of New York
Commission No. _____
My commission expires on _____

**JER WEI CHEN
Notary Public, State of New York
No. 01CH6174210
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires 09/17/2011**

8

Exhibit F



**FINRA**
Financial Industry Regulatory Authority

Harry Albirt                                              Tel: 212-858-5289
Chief Arbitration Counsel                                 Fax: 646-625-6008
                                                          harry.albirt@finra.org

November 10, 2008

RE:   Oppenheimer & Co. Inc. f/k/a Fahnestock & Co. Inc. v. Michael A. Sassano III
      v. Oppenheimer & Co.. Inc. f/k/a Fahnestock & Co. Inc.
      Docket #2004-015814

TO THE PARTIES:
Michael McAllister, Esq.                    Mitchell Cohen, Esq.
Satterlee, Stephens, Burke & Burke, LLP     Wechsler & Cohen, LLP
230 Park Avenue - Suite 1130                Attorneys at Law
New York, NY 10169-0079                     17 State Street, 15th Floor
Claimant Representative                     New York, NY 10004
                                            Respondent Representative

Theodore Snyder, Esq.
Krebsbach & Snyder
One Exchange Plaza
55 Broadway, Suite 1600
New York, NY 10006
Claimant Representative

Enclosed please find the decision in the above matter. The arbitrators have assessed the
forum fees and costs as follows:

|  | Dates | Claimant Fees | Respondent Fees |
|---|---|---|---|
| For Hearing Fees: | 7/22 - 7/25/08<br>10/21 – 10/22/08 | $3,600.00 | $3,600.00 |
| For Late Settlement: | | $0 | $0 |
| For Pre-Hearing Conference(s) on: | 4/27/07,<br>10/3/07, 10/16/07,<br>7/14/08, 7/17/08 | $1,350.00 | $1,350.00 |
| For Adjourned Dates: | 4/4/06,<br>5/1/07, 12/11/07 | $1,200.00 | $1,200.00 |
| SUB-TOTAL: FEES OWED | | $6,150.00 | $6,150.00 |
|  |  |  |  |

Investor protection. Market integrity.       Dispute Resolution          One Liberty Plaza        t  212 858 4200
                                             Northeast Regional Office   165 Broadway, 27th Floor  f  212 858 4429
                                                                         New York, NY              www.finra.org
                                                                         10006-1404

| | | | |
|---|---|---|---|
| Less Credits, if any, for: hearing deposit; invoiced fees; paid fees: OVERPAYMENT | | $600.00 $600.00 $0 | $600.00 $0 $400.00 |
| SUB-TOTAL: CREDITS | | $1,200.00 | $1,000.00 |
| | | | |
| TOTAL: FEES OWED less CREDITS | | $4,950.00 | $5,150.00 |
| Party Reimbursement Adjustment | | $0 as debit | $0 as credit |
| | | | |
| AMOUNT REFUNDED: | | $0 | $0 |
| AMOUNT BILLED: | | $4,950.00 | $5,150.00 |

No amounts are payable at this time. We will bill the parties directly.

Sincerely,

Harry Albiet

Enclosure



**FINRA DR**

In the Matter of Arbitration Between

Case:  Oppenheimer & Co. Inc. f/k/a Fahnestock & Co. Inc. v. Michael A. Sassano III
Docket: 2004-015814

Attorneys:
    For Claimant(s):   Theodore Snyder, Michael J. McAllister – New York, NY
    For Respondent(s):  Mitchell Cohen, James Hiler – New York, NY

Date Filed: 11/04/2004          First Scheduled: 11/14/2005          Decided:  11/05/2008

Case Summary:  Claimant, a Member firm, alleges Respondent, a former employee, failed
to repay a Promissory Note. On February 7, 2005, Respondent filed a Counterclaim
alleging wrongful termination, breach of contract and unjust enrichment.

Product: Promissory Note                         Market:

Claim:

| | Claim | Counter Claim |
|---|---|---|
| Claim: | $98,259.45 | UNSPECIFIED |
| Punitive: | $0.00 | UNSPECIFIED |
| Atty Fees: | UNSPECIFIED | UNSPECIFIED |
| Deposit: | $600.00 | $600.00 |

Award:

| | Award |
|---|---|
| Award: | $0.00 |
| Punitive: | $0.00 |
| Atty Fees: | $0.00 |
| Costs: | $5,100.00 |

Forum Fees:    $7,200.00

Case:    Oppenheimer & Co. Inc. f/k/a Fahnestock & Co. Inc. v. Michael A. Sassano III
Docket: 2004-015814

Decision: The undersigned arbitrator(s) have decided and determined that in full and final
settlement of all claims between the parties that:
All claims submitted by Claimant Oppenheimer & Co., Inc. are denied in their entirety,
and all counterclaims submitted by Respondent Michael A. Sassano, III are denied in their
entirety.  The NYSE Legacy costs of $5,100.00 and the NYSE Legacy forum fees in the
amount of $7,200.00 are assessed equally between the parties.

Remarks:

The undersigned arbitrators hereby affirm that they have executed this instrument which is
their award:

Arbitrators: (D = Dissents)            Signatures:

    Ilisa Smukler

    Robert Fabricant

    Seth Finkel

City, State:  Boca Raton, FL          Date:      11/05/08

Sessions: (12)
Hearing Dates:
        07/22/08 , (2 )
        07/23/08 , (2 )
        07/24/08 , (2 )
        07/25/08 , (2 )
        10/21/08 , (2 )
        10/22/08 , ( 2)

Exhibit G



**FINRA**

Financial Industry Regulatory Authority

**VIA MAIL AND FACSIMILE**

November 17, 2008

Matthew L. Mustokoff, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Subject:   FINRA Dispute Resolution Arbitration Number 05-02827
           CIBC World Markets Corporation v. Michael Sassano

Dear Mr. Mustokoff:

In accordance with the Code of Arbitration Procedure I enclose the decision reached by the arbitrator(s) in the above-referenced matter.

<u>Responsibility to Pay Monetary Award</u>

Pursuant to the Code of Arbitration Procedure[1] the responsible party must pay any monetary awards within 30 days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction.  If an award is not paid within 30 days, the responsible party must pay post-judgment interest at the legal rate or as provided in the award by the arbitrator(s).

<u>Tracking Payment of Award</u>

FINRA Dispute Resolution has implemented a system of monitoring and tracking compliance with arbitration awards by members and associated persons. We request prevailing claimants to notify us in writing when their awards have not been paid within 30 days of receipt of the award, and require member firms to certify in writing that they have complied with awards against them or their associated persons. The 30-day period ends on:  December 17, 2008.

Written notification concerning award compliance or lack thereof must be directed to:

Avichai Badash
FINRA Dispute Resolution
One Liberty Plaza
165 Broadway, 52nd Floor

---

[1]Customer Code Rule 12904
Industry Code Rule 13904
Old Code Rule 10330(h)

Investor protection. Market Integrity.

Dispute Resolution          One Liberty Plaza      t  212 858 4200
Northeast Regional Office    165 Broadway          f  301 527 4873
                             27th Floor            www.finra.org
                             New York, NY
                             10006-1404

New York, NY 10006
212-858-4325 (tel) 301-527-4739 (fax)

### Expedited Suspension Proceedings for Non-Payment of Awards

Members and associated persons who do not comply with an award in a timely manner are subject to expedited suspension proceedings as set forth in Rule 9554.

### Right to File Motion to Vacate Award

All awards are final and are not subject to review or appeal by the arbitration panel or by FINRA Dispute Resolution. Any party wishing to challenge the award must make a motion to vacate the award **in a federal or state court** of appropriate jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, or applicable state statute. There are limited grounds for vacating an arbitration award, and a party must bring a motion to vacate within the time period specified by the applicable statute. Parties and counsel should consult federal and state statutes and case law to determine the appropriate court, standards, and time limitations in their individual circumstances. FINRA Dispute Resolution is not authorized to provide legal advice concerning a motion to vacate.

A motion to vacate, confirm, or modify an arbitration award is a matter only between the parties to the arbitration. FINRA Dispute Resolution is not a proper party to post-award motions and should not be named as a party to any post-award motion. However, for cases filed on or after April 12, 2004, if the award contains expungement relief, or if a party seeks expungement relief in court, there may be a duty to name FINRA as a party as provided in Rule 2130.

### Questions Concerning Award

Please direct any questions regarding this award to me. **The parties must not contact the arbitrators directly.**

### Forum Fees

You will receive under separate cover an invoice that reflects the fees assessed and any outstanding balance or refund due. **Fees are due and payable to FINRA Dispute Resolution upon receipt of the invoice and remitted to the address specified on the invoice.**

Any applicable refunds will also be sent under separate cover approximately 45 days after the case closes. Pursuant to the Code of Arbitration Procedure, "Any refunds of fees or costs incurred under the Code will be paid directly to the named parties, even if a non-party made payment on behalf of the named parties."[2]

All questions regarding payment of fees and refunds should be directed to FINRA Finance at (240) 386-5910.

### Arbitration Evaluation

---

[2] Customer Code Rule 12902(e)
Industry Code Rule 13902(e)

As a service organization, the primary goals of FINRA Dispute Resolution are the integrity of its process and the satisfaction of its clients. To ensure that we are meeting your needs and satisfying our commitment to you, **we need to hear from you.** If you have not already done so, please take the time to complete an evaluation of our services, the process, and the arbitrator(s) assigned to your case. For your convenience, we have now made it possible for you to evaluate our services using the Internet. Please direct your Web browser to http://www.finra.org/arbevaluation.

If you do not have Internet access, or have difficulty completing the evaluation form online, we will send a hard copy evaluation form to you. The completed evaluation form should be mailed in to the address indicated below. If you need a hard copy of the evaluation form, please contact the undersigned. Whenever possible, however, we encourage you to use the new online version, as it will help us to review your feedback in a more expeditious manner. Your feedback is a valuable and necessary component in our efforts to serve you better.

Very truly yours,

Nicole C. Haynes
Case Administrator
Phone:  212-858-4200
Fax:      301-527-4873
NEProcessingCenter@finra.org

NCH:cxm:LC09A
idr: 07/22/2008

RECIPIENTS:

Mitchell S. Cohen, Esq., Michael A. Sassano, III
Wechsler & Cohen, LLP, 17 State Street, 15th Floor, New York, NY 10004

Matthew L. Mustokoff, Esq., CIBC World Markets Corp.
Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153

**Award**
**FINRA Dispute Resolution**

In the Matter of the Arbitration Between:

CIBC World Markets Corporation (Claimant) vs. Michael Sassano (Respondent)

Case Number: 05-02827                    Hearing Site: New York, New York

Nature of the Dispute: Member vs. Associated Person.

## REPRESENTATION OF PARTIES

Claimant CIBC World Markets Corporation hereinafter referred to as "Claimant": Matthew L. Mustokoff, Esq., Weil, Gotshal & Manges LLP, New York, NY. Previously represented by Elizabeth Rose Aylett, Esq., CIBC World Markets, New York, NY.

Respondent Michael Sassano ("Sassano") hereinafter referred to as "Respondent": Mitchell S. Cohen, Esq., Wechsler & Cohen LLP. Previously represented by Gerald Griffin, Esq., Carter, Ledyard & Milburn LLP.

## CASE INFORMATION

Statement of Claim filed on or about: May 31, 2005.
Claimant signed the Uniform Submission Agreement.

Statement of Answer and Counterclaim filed by Respondent on or about: October 19, 2005.
Respondent signed the Uniform Submission Agreement: October 19, 2005.

## CASE SUMMARY

Claimant asserted the following cause of action: breach of promissory note.

Unless specifically admitted in his Answer, Respondent denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

In his Counterclaim, Respondent asserted the following causes of action: breach of fee-sharing agreement and failure to compensate, breach of WealthPlus plan, and tortious interference with employment.

Unless specifically admitted in its Answer, Claimant denied the allegations made in the Counterclaim and asserted various affirmative defenses.

FINRA Dispute Resolution
Arbitration No. 05-02827
Award Page 2 of 5

## RELIEF REQUESTED

Claimant requested compensatory damages in the amount of $113,200.58, interest at the rate of 8%, costs, and attorneys' fees.

Respondent requested the dismissal of the Statement of Claim in its entirety.

In his Counterclaim, Respondent requested unspecified compensatory damages and punitive damages in an amount to be determined in the arbitration.

Claimant requested the dismissal of the Counterclaim in its entirety.

At the close of the hearing, Respondent requested lost net commissions in the amount of $10,216,725.00, lost earnings of $3,837,456.00, annuity damages in the amount of $675,996.83, damages for the WealthPlus plan of $509,403.00 and attorneys' fees of $497,523.19.

## OTHER ISSUES CONSIDERED AND DECIDED

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Claimant's claims are denied in their entirety.

2. Claimant is liable for and shall pay to Respondent compensatory damages in the amount of $250,000.00.

3. Claimant is liable for and shall pay to Respondent costs in the amount of $250.00 to reimburse Respondent for the filing fee previously paid to FINRA Dispute Resolution.

4. Any and all relief not specifically addressed herein is denied.

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees
FINRA Dispute Resolution will retain or collect the non-refundable filing fees for each claim:

| | |
|---|---|
| Initial claim filing fee | = $1,000.00 |
| Counterclaim filing fee | = $ 250.00 |

FINRA Dispute Resolution
Arbitration No. 05-02827
Award Page 3 of 5

## Member Fees

Member fees are assessed to each member firm that is a party in these proceedings or
to the member firms that employed the associated persons at the time of the events
giving rise to the dispute. Accordingly, CIBC World Markets Corporation is a party.

| | |
|---|---|
| Member surcharge | = $1,700.00 |
| Pre-hearing process fee | = $ 750.00 |
| Hearing process fee | = $2,750.00 |

## Adjournment Fees

Adjournments granted during these proceedings for which fees were assessed:

| | |
|---|---|
| June 26-29, 2006 adjournment by the parties | = Waived |
| October 16-19, 2006 adjournment by Claimant | = Waived |
| October 26-31, 2007 adjournment by the parties | = Waived |
| January 15-17, 23-24, 2008 adjournment by the parties | = Waived |
| May 14, 2008 adjournment by Claimant | = Waived |

## Three-Day Cancellation Fees

Fees apply when a hearing on the merits is postponed or settled within three business
days before the start of a scheduled hearing session:

| | |
|---|---|
| May 14, 2008 adjournment by Claimant | = Waived |

## Discovery-Related Motion Fees

Fees apply for each decision rendered on a discovery-related motion.

| | |
|---|---|
| One (1) Decision on discovery-related motion on the papers with (1) one arbitrator @ $200.00 | = $ 200.00 |
| Claimant submitted one discovery-related motion | |
| Total Discovery-Related Motion Fees | = $ 200.00 |

1. The Panel has assessed $200.00 of the discovery-related motion fees to Claimant.

## Forum Fees and Assessments

The Panel has assessed forum fees for each session conducted or each decision
rendered on either a discovery-related motion on the papers or a contested motion for
the issuance of a subpoena. A session is any meeting between the parties and the
arbitrator, including a pre-hearing conference with the arbitrator, that lasts four (4) hours
or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| Six (6) Pre-hearing sessions with Panel @ $1,125.00 | | | = $6,750.00 |
| Pre-hearing conferences: | October 25, 2005 | 1 session | |
| | January 24, 2006 | 1 session | |
| | April 19, 2007 | 1 session | |
| | April 23, 2008 | 1 session | |
| | May 7, 2008 | 1 session | |
| | July 15, 2008 | 1 session | |

| | |
|---|---|
| Twenty-two (22) Hearing sessions @ $1,125.00 | = $24,750.00 |

FINRA Dispute Resolution
Arbitration No. 05-02827
Award Page 4 of 5

| Hearing Dates: | | |
|---|---|---|
| | May 15, 2008 | 1 session |
| | May 21, 2008 | 1 session |
| | May 22, 2008 | 2 sessions |
| | May 29, 2008 | 2 sessions |
| | June 4, 2008 | 2 sessions |
| | June 18, 2008 | 2 sessions |
| | July 30, 2008 | 2 sessions |
| | August 4, 2008 | 2 sessions |
| | September 3, 2008 | 2 sessions |
| | September 4,, 2008 | 2 sessions |
| | October 28, 2008 | 2 sessions |
| | October 29, 2008 | 2 sessions |

Total Forum Fees                                                    = $31,500.00

1. The Panel has assessed $31,500.00 of the forum fees to Claimant.

All balances are payable to FINRA Dispute Resolution and are due upon receipt.

FINRA Dispute Resolution
Arbitration no. 08-02637
Award Page 8 of 8

## ARBITRATION PANEL

Allen H. Green                                    Public Arbitrator, Presiding Chairperson
Alice J.P. Lee-Getman                             Public Arbitrator
Jerome H. Levy                                    Non-Public Arbitrator

I, the undersigned Arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil
Practice Law and Rules, that I am the individual described herein and who executed this
instrument which is my award.

**Concurring Arbitrators' Signatures**


_____                           _____
Allen H. Green                                    Signature Date
Public Arbitrator, Presiding Chairperson


_____                           _____
Alice J.P. Lee-Getman                             Signature Date
Public Arbitrator


_____                           _____
Jerome H. Levy                                    Signature Date
Non-Public Arbitrator


November 17, 2008
_____
Date of Service (For FINRA Dispute Resolution use only)

FINRA Dispute Resolution
Arbitration No. 05-03527
Award Page 5 of 6

## ARBITRATION PANEL

| | | |
|---|---|---|
| Allen H. Green | – | Public Arbitrator, Presiding Chairperson |
| Alice J.P. Lee-Getman | – | Public Arbitrator |
| Jerome H. Levy | – | Non-Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument which is my award.

### Concurring Arbitrators' Signatures

Allen H. Green                                                          Signature Date
Public Arbitrator, Presiding Chairperson


_(signature)_

Alice J.P. Lee-Getman                                         11/13/08
Public Arbitrator                                                   Signature Date


Jerome H. Levy                                                      Signature Date
Non-Public Arbitrator


November 17, 2008
Date of Service (For FINRA Dispute Resolution use only)

FINRA Dispute Resolution
Arbitration No. 05-03637
Award Page 5 of 5

## ARBITRATION PANEL

| Allen H. Green | - | Public Arbitrator, Presiding Chairperson |
|---|---|---|
| Alice J.P. Lee-Getman | - | Public Arbitrator |
| Jerome H. Levy | | Non-Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument which is my award.

### Concurring Arbitrators' Signatures

Allen H. Green                                                            Signature Date
Public Arbitrator, Presiding Chairperson

Alice J.P. Lee-Getman                                                 Signature Date
Public Arbitrator

Jerome H. Levy                                                          Signature Date
Non-Public Arbitrator

November 17, 2008
Date of Service (For FINRA Dispute Resolution use only)

Exhibit H

**WECHSLER & COHEN, LLP**
Attorneys At Law
17 State Street
15th Floor
New York, New York 10004
Telephone: (212) 847-7900
Telecopier: (212) 847-7955

DAVID B. WECHSLER
DIRECT DIAL: (212) 847-7915
E-mail: dwechsler@wechco.com

December 22, 2008

**Hand Delivery**

David Stoelting, Esq.
Senior Trial Attorney
United States Securities and Exchange Commission
New York Regional Office
3 World Financial Center, # 400
New York, New York 10281

Re:   **CIBC World Markets Corp. v Michael Sassano.**
      **NASD 05-02827**

Dear Mr. Stoelting:

As you know, we deposited into the Wechsler & Cohen, LLP ("W&C") trust account the sum of $250,250.00 representing funds paid by CIBC World Markets Corp. in satisfaction of the arbitral award in the above-referenced proceeding. As you also know, Mr. Sassano has raised attorneys' fee issues with us which we have been attempting to resolve, thus far to no avail. Unfortunately, our communications with Mr. Sassano leave us without a resolution and understanding of Mr. Sassano's claims except to say that there is a dispute.

We believe that we entered into an understanding with Mr. Sassano in October 2008, following protracted discussions about bills issued and arrears owed, under which we agreed to a conditional attorneys' fee cap being imposed on a previous agreement for us to be paid solely on an hourly basis (at significantly reduced hourly rates from our ordinary hourly rates) and without a contingency interest for work in two matters in which we formerly represented Mr. Sassano. Mr. Sassano of course also maintained the continuing obligation to pay all disbursements. The conditions included: (a) prompt payment of $50,000; and (b) that even if there was no arbitration award entered in Mr. Sassano's favor under which he received a payment of money, that he would pay within the first quarter of 2009 additional fees of no more than $110,000, plus disbursements, regardless of whether billable time was more. Of course, if an arbitration award was issued requiring payment to Mr. Sassano, as happened in the CBIC arbitration, then the

WECHSLER & COHEN LLP
David Stoelting, Esq.
December 22, 2008
Page 2

Assignment of Arbitration proceeds signed by Mr. Sassano in favor of the SEC controls as to the CIBC arbitration. It provides that "after payment of the fees and reimbursement due to [our firm] . . . deduction for any amounts due CIBC, and any assessments imposed by the Arbitration panel and/or the Financial Industry Regulatory Authority", the "Net Arbitration Proceeds" up to $1 million would be paid to the United States Securities and Exchange Commission ("SEC"). Thus, if Mr. Sassano had recently agreed to have us issue a check from our escrow account for the $110,000 in attorneys' fees, the balance owed under the conditioned cap, plus his outstanding disbursements: (a) due us of $10,926.83; and (b) due Trialgraphix of $764.05, FINRA of $5,150 and IKON of $657.67, for a disbursement total of $17,498.55, we believe Mr. Sassano's payment obligations to us would have been satisfied and we could have simultaneously issued a check to the United States Securities and Exchange Commission ("SEC") for the balance of $122,751.45 (which would represent the Net Arbitration Proceeds of the award).

Since Mr. Sassano has not authorized their payments out of our escrow account from the Arbitration Proceeds, as defined in the Assignment of Arbitration Proceeds, we believe he has not satisfied the pre-condition underlying the attorneys' fee cap we had offered him. As a result, we believe that he instead owes us for all of the time we incurred (at the hourly rates agreed upon) plus disbursements that to date remain unpaid. The billable time recorded for which payment is $159,086.92, and there are $17,498.55 in disbursements (see above).

Accordingly, were these the only two possible scenarios, pursuant to the Assignment Agreement we would send you a check drawn on our trust account payable to the "United States Securities and Exchange Commission" in the sum of $73,664.53, being the least to which the SEC would be entitled.

However, by email dated November 20, 2008, Mr. Sassano stated that he "expect[s] us to honor our original contract," by which he means the March 12, 2007 retainer agreement he entered into when he first retained us. We do not believe this is correct, as Mr. Sassano, at his request, entered into a revised retainer with my firm on July 9, 2008. But, having made this statement, we cannot simply ignore it (although we disagree with Mr. Sassano). Under the "original contract" we are entitled to be paid $350,000 in legal fees, all disbursements, plus a contingency of 20% "of both any affirmative recovery he may receive on claims [he] bring[s] and 20% of the amounts of the claims brought by Oppenheimer and/or CIBC which [he] may defeat." If this were applied, we would be entitled to a contingency payment of $432,925.85 (see attached) plus the aforesaid $17,498.55 in disbursements, for a total $450,424.40. But, since Mr. Sassano has paid my firm a total of $475,112.33 in attorneys' fees, he would be entitled to a "credit" of $125,112.33 (the amount in excess of the $350,000 out-of-pocket attorneys' fee cap contained in his original retainer letter). This would mean that Mr. Sassano, in our view, would still owe us $307,813.52, and in turn mean the entire $250,250.00 in escrow would be due us (and we would still be owed $57,813.52 by Mr. Sassano). Again, we do not believe that Mr. Sassano's recent contention that the "original contract" governs here has any merit. Nonetheless, because Mr. Sassano has made this assertion we feel constrained not to release any of the escrowed funds at this juncture, although we would be willing to issue a check to the SEC in the amount of $73,664.53, (as calculated above) provided that the SEC sends us a written

WECHSLER & COHEN LLP
David Stoelting, Esq.
December 22, 2008
Page 3

undertaking to promptly return such amount, or any portion of such amount, to us should the court determine we are entitled the same.

We intend to commence an appropriate proceeding to fix the precise amount due Wechsler & Cohen, LLP.  Once an order is issued in that regard, or we reach a full or partial accord with Mr. Sassano (we are still trying and are hoping to meet with Mr. Sassano during the second week of January to see if such an accord can be reached), should any monies be due the SEC we will issue it a check at that time.

In the meantime, we will transfer the entirety of the escrow funds into an interest bearing escrow account and, of necessity, reserve all of our rights with respect to Mr. Sassano, the SEC, and/or any other interested party.

If you have any questions or suggestions, please do not hesitate to contact us.

Sincerely,

David B. Wechsler

Enclosure

cc:   Michael A. Sassano (via e-mail only w/encl.)

DBW:mns

### Wechsler & Cohen, LLP Calculation Per Original Retainer Agreement

| | | |
|---|---|---|
| I. | Award [granted] | $250,250.00 |
| | | |
| II. | Promissory Notes [denied] | |
| | A.  CIBC – Principal | $113,200.58 |
| | Interest[1] (to date of award @ 8%) | $36,718.80 |
| | | |
| | B.  OPCO – Principal | $98,259.45 |
| | Interest[2] (to date of award @ 8%) | $36,187.20 |
| | | |
| III. | Attorneys' Fees [denied] | |
| | A.  CIBC | $1,500,000.00 |
| | | |
| | B.  OPCO | $130,013.21 |
| | | $2,164,629.24 |
| | | x   2 |
| | | $432,925.85 |

| | |
|---|---|
| Amount of Attorneys' Fees Paid by Sassano in Excess of $350,000 | $125,112.33 |
| | |
| Total "due" Wechsler & Cohen, LLP | $307,813.52 |

---

[1] 10.25.04 – 11.13.08 ($24.81/day x 1,480 days)
[2] 03.31.04 -11.05.08 ($21.54/day x 1,680 days)